IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JEFFERY WALKER                                                                               PLAINTIFF

VS.                                       CASE NO. 3:17CV00052 PSH

NANCY A. BERRYHILL, Acting Commissioner,
    Social Security Administration                                                           DEFENDANT


**ORDER**

Plaintiff Jeffery Walker ("Walker"), in his appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred in determining his residual functional capacity ("RFC"). Specifically, Walker alleges the ALJ gave too much credit to the findings of Dr. Maryanov ("Maryanov"), wrongly considered Walker's noncompliance with medications and treatment, and wrongly assessed the opinion of treating physician Dr. Thakor ("Thakor"). The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on January 11, 2015. (Tr. 62-102). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period for purposes of Walker's disability determination is from the alleged onset date of October 25, 2011, through March 24, 2016, the date of the ALJ's decision.

At the January 2016 administrative hearing, Walker testified that he was 43 years old with

1

an eleventh grade education. He indicated he could read, write, and do basic math. He stated he possessed a driver's license, owned a car, and could probably drive for an hour and a half nonstop. Walker stood six foot four and weighed two hundred ninety pounds at the time of the hearing. His past relevant work included assembly line work, and he stated he was fired from the job for absenteeism. Subsequent jobs were not successful, according to Walker, because he could not perform the duties. The ALJ noted the following impairments were mentioned in the medical records: mild obesity; obstructive sleep apnea; degenerative disc disease of the cervical spine, thoracic spine, and lumbar spine; chest pain; neck pain; thoracic spine pain; stenosis; and bilateral hand numbness. Walker testified that these impairments prevent him from working and interfere with his daily activities.

Walker, who lives alone, indicated he got up around 7 a.m., checked his blood sugar level (due to his diabetes), and did light cleaning, such as sweeping and washing dishes. He stated that he checked on family members by phone but "didn't really get out that much." (Tr. 85). According to Walker, the light housework for about 30 minutes aggravated his neck and required him to rest. Bending or sweeping a lot also required him to rest, according to his testimony. Walker said he takes insulin twice daily, along with pain medication. Walker stated he typically went to bed no later than 10 p.m., and he was in the process of obtaining a CPAP machine to assist with his sleep apnea. Walker identified neck and lower back pain as impediments to work, preventing him from sitting for two hours without a break. If his neck pain is aggravated, he stated that he must take medication, which causes drowsiness and necessitates a break "for hours." (Tr. 89). Walker described tingling in his hands, and said if he used his hands for an hour "I'd pay for it the next day." (Tr. 90). Similarly, Walker indicated he could lift more than ten pounds but "would be paying for

2

it the next day." (Tr. 91). Finally, Walker testified to having anxiety which would prevent him from working even if he had no physical problems. (Tr. 66-94).

A vocational expert, Stacy McKisick ("McKisick"), testified that Walker's past relevant jobs ranged from light to heavy exertional jobs. The ALJ posed a hypothetical question to McKisick, asking her to assume a worker of Walker's age and educational and work background who could perform sedentary work with numerous restrictions.[1] McKisick agreed with the ALJ that such a worker could not perform any of Walker's past relevant work. However, she testified such a worker could perform the jobs of telephone order clerk and surveillance system monitor. (Tr. 97-100).

The ALJ, in his March 2016 decision, found Walker had performed substantial gainful activity ("SGA") on three occasions[2] after the alleged onset date of disability. The ALJ also found there were twelve month periods when Walker did not engage in SGA. As a result, the ALJ considered if Walker were disabled during those year long periods when he did not perform SGA. The ALJ found Walker had the following severe impairments: degenerative disc disease with chronic neck pain, diabetes mellitus; and obesity. The ALJ addressed the following other impairments, finding them nonsevere: carpal tunnel syndrome, sleep apnea, diabetic retinopathy, hypertension, osteopenia, and anxiety. The ALJ determined Walker had the RFC for sedentary

---

[1] The restrictions were: occasional climbing, no jobs requiring balance such as ladders or scaffolding; occasional stooping, crouching, kneeling, and crawling; lift up to 10 pounds or less; sit six to eight hours, one to two hours without interruption; stand and walk no more than two hours in an eight-hour work day and a half hour at a time; frequent reaching and handling; no constant, repetitive reaching and handling; limited to unskilled, rote activities, with concrete instruction, and no restrictions on contact with supervisors, co-workers, or the public. (Tr. 98-99).

[2] The ALJ identified the periods of SGA as from October – December 2011, January – March 2013, and May – July 2014.

work with restrictions which mirrored those posed to McKisick at the administrative hearing. Citing the pertinent factors from *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984), the ALJ thoroughly reviewed the objective medical evidence, including the findings of the treating physician, Thakor, and those of neurosurgeon Maryanov, who examined Walker once. The ALJ concluded Walker's description of his impairments was "not fully credible." (Tr. 35). In reaching this conclusion, the ALJ cited inconsistencies between the testimony and the objective medical evidence, Walker's noncompliance with medical directives, Walker's behavior at the hearing,[3] and Walker's daily activities. The ALJ determined Walker was unable to perform any of his past relevant work. Relying upon McKisick's testimony, the ALJ found Walker capable of performing the jobs of telephone order clerk and surveillance system monitor. Accordingly, the ALJ found Walker was not disabled. (Tr. 27-39).

### *ALJ assigned too much weight to the findings of Maryanov:*

Treating physician Thakor referred Walker to be seen by Maryanov, a neurosurgeon, for evaluation of neck and back pain. In August 2014 Maryanov examined Walker and reviewed MRI films of his thoracic, lumbar, and cervical spine. Maryanov's physical examination found Walker to have full range of motion without tenderness in his neck, and full strength in both upper and lower extremities. Maryanov's review of the MRIs led him to conclude the thoracic spine was normal, the cervical spine was near normal, and the lumbar spine "shows significant degenerative disc disease at the level of L4-L5 intervertebral disc space with some mostly left-sided lumbar stenosis at that level due to a combination of disc degeneration and facet arthropathy." (Tr. 555). Maryanov's

---

[3] The ALJ cited Walker's testimony to an ability to sit for 30-60 minutes before having to move about, and found Walker displayed no "discomfort or overt pain behavior" during the hearing, which lasted roughly fifty minutes. (Tr. 35).

4

treatment plan noted that surgery was not a good option, in part because Walker's discomfort was diffuse. Maryanov explained to Walker that "he would do well with initiation of physical therapy" and might benefit from pain management. (Tr. 555).

In his decision, the ALJ reviewed Maryanov's records and noted he "only recommended conservative treatment of physical therapy and pain management." (Tr. 35). Walker argues that Maryanov's reading of the MRI was at odds with the results as found by Thakor, and the ALJ was wrong to accept Maryanov's findings and wrong to characterize the treatment plan as conservative. Walker cites the Court to an interpretation of his cervical spine MRI typewritten by Sharon Wallace, who apparently added a handwritten note indicating the abnormalities at C3-4 and C4-5 "causes neck and shoulder pain by Dr. Thakor's assessment." (Tr. 423-424).

There is no error in the ALJ's analysis of Maryanov and Thakor and their conclusions drawn from review of the MRIs. Additionally, the ALJ's characterization of the treatment plan as conservative is not erroneous. While there is room for argument what constitutes conservative treatment, it is clear that physical therapy is a more conservative course of treatment than surgery.[4] More importantly, the record is clear that Maryanov and Thakor were not at odds with their overall assessment of Walker. Maryanov's August 2014 plan to proceed with physical therapy and pain management was consistent with Thakor's treatment notes both before and after Maryanov's findings. In July 2014 Thakor's plan of treatment included "regular exercise 30 mins a day for 5 day[s] a week." (Tr. 480). In September 2014, Thakor noted Walker should not work with machinery where he was required to bend forward or lift any weight but also advised Walker to

---

[4] Walker argues, "The Commissioner can cite no rule that grants disability benefits only to those who have undergone surgery." Docket entry no. 13, page 19. This statement, while true, is not helpful, as the ALJ did not suggest the existence of such a rule.

5

continue with the July 2014 exercise regimen. (Tr. 564). The exercise instructions were repeated in December 2014. (Tr. 617). In February 2015, Thakor advised Walker to continue with the prescribed exercise, and in March and October 2015, Walker was directed to "exercise regularly." (Tr. 630, 633, 683). In March 2016, Thakor directed Walker to "remain as active as possible with walking." (Tr. 741). When both the treating physician, Thakor, and the conferring expert neurosurgeon, Maryanov, direct a claimant to increase activity, this constitutes medical evidence to support the ALJ's conclusion that Walker could perform other jobs. *Moore v. Astrue*, 572 F.3d 520 (8th Cir. 2009). This is particularly true in this instance, where the ALJ limited Walker to sedentary work with numerous restrictions.

In summary, there was no error in the ALJ's consideration of Maryanov's findings. Even if we were to assume a conflict between Maryanov and Thakor in the interpretation of the MRIs, any error in this regard would be harmless since the physicians agreed on the treatment plan, and neither physician opined Walker to be disabled.

***ALJ wrongly considered Walker's noncompliance with medications and treatment:***

In his opinion, the ALJ stated Walker had "a history of noncompliance with his medication and treatment." (Tr. 35). The ALJ cited Thakor's February 2014 notation that Walker was not taking his mediation for hypertension, diabetes, and dyslipidemia. The ALJ noted other instances where Walker did not take medication for hypertension or diabetes, and also cited Walker's failure to follow through on Maryanov's recommendation to engage in physical therapy. Walker argues that the ALJ erred because he was compliant on *some* medication and treatment. Walker's argument is without merit. The ALJ did not state that Walker was noncompliant in every instance, and it was not necessary for him to do so. Noncompliance need not be comprehensive to be relevant. Here,

6

the ALJ cited numerous instances, and the record also shows Walker rejected Thakor's instructions to quit smoking. These are valid factors and were properly considered by the ALJ. *Holley v. Massanari*, 253 F.3d 1088 (8th Cir. 2001); *Kisling v. Chater*, 105 F.3d 1255 (8th Cir. 1997).

### *ALJ wrongly assessed the opinion of treating physician Thakor:*

Walker cites a portion of Thakor's notes from a September 2014 office visit. Thakor wrote that Walker would be "unable to bend forward or backward considering his severe spine degenerative disc diseases as well as degenerative joint disease. Patient will have functional limitation considering his degenerative joint disease as well as degenerative disc disease in the C-spine and T-spine as well as L-spine." (Tr. 563). Walker urges that this notation of Thakor is a treating physician's opinion and can be disregarded only if persuasive contradictory evidence exists. To support this claim, Walker cites *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990), *Prosch v. Apfel*, 201 F.3d 1010 (8th Cir. 2000), *Reed v. Barnhart*, 399 F.3d 917 (8th Cir. 2005), and *Singh v. Apfel*, 222 F.3d 448 (8th Cir. 2000). All of these cases involve opinions from treating physicians that the claimant could not work, which is in contrast to the limited nature of the notation of Thakor on the September office visit. While the ALJ summarized the treatment of Walker by Thakor, including the September 2014 office visit, the ALJ did not specifically address the language cited by Walker. The ALJ was not required to do so. In determining Walker's RFC, the ALJ is not required to address every notation in the record, even notations from treating physicians. Rather, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ recited that his RFC determination was made "after careful consideration of the entire record." (Tr. 32).

7

The ALJ's discussion of the medical evidence and testimony was thorough, and substantial evidence supports the conclusions reached by the ALJ. There is no error in his consideration of Thakor's treatment notes. This is especially true in light of the ALJ's finding that Walker could perform only sedentary work with numerous restrictions. The jobs which the ALJ cited as available to Walker are not physically demanding, reflecting the ALJ's allowance for Walker's impairments. The limitations found by the ALJ were appropriate and corresponded with his medical impairments. We find substantial evidence supports the RFC calculation in this instance, and there is no merit to this claim.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Walker's complaint is dismissed with prejudice.

IT IS SO ORDERED this 17th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE